## Commonwealth v. Hill

*John P. Harrington*, Deputy Attorney General, for Commonwealth.

*Harry B. Goldberg*, for appellant.

SHELLEY, J., December 3, 1962.—This is an appeal by Leroy H. Hill (hereinafter referred to as peti-

tioner) from an order of the Secretary of Revenue of the Commonwealth of Pennsylvania (hereinafter referred to as the secretary) suspending his license to operate a motor vehicle for a period of one year. There was a hearing before the court on October 29, 1962.

## Findings of Fact

1. Petitioner resides at 1515 North Fifteenth Street, Harrisburg, Dauphin County, Pennsylvania, and is of the age of 39 years.

2. Petitioner is the holder of a valid operator's license issued by the Commonwealth of Pennsylvania.

3. Petitioner pleaded guilty to the following offenses in the Court of Quarter Sessions of Dauphin County, Pennsylvania: no. 194 January sessions, 1962, adultery: no. 195 January sessions, 1962, contributing to the delinquency of a minor; no. 196 January sessions, 1962, contributing to the delinquency of a minor.

4. On or about May 9, 1962, three "abstract of court record of violation of The Vehicle Code" were received by the Secretary from the Clerk of Courts of Dauphin County certifying that petitioner had pleaded guilty to the aforesaid offenses.

5. Joan Shirey, age 18, was a ward of the Juvenile Court of Mifflin County, Pennsylvania. Shelvy Houser, alias "Penny", age 17, was a ward of the Juvenile Court of Franklin County, Pennsylvania.

6. Joan Shirey and Shelvy Houser were escapees from the Harrisburg State Hospital where they had been committed by the Juvenile Courts aforesaid.

7. Joan Shirey and Shelvy Houser were of the Caucasian race and petitioner was a Negro.

8. The two girls above named were brought to the home of petitioner by a man named "Butch" in the morning of November 24, 1961.

9. When petitioner returned to his home that evening, the two girls were not there.

10. Several days later the girls called him on the telephone from Middletown and asked if they could return to his home, and he gave them permission to do so.

11. The same day the girls left his residence and were gone for several more days.

12. Several days later petitioner had a phone call from one Jimmy Jefferies from Middletown who asked petitioner if the girls could stay at his place until other arrangements could be made.

13. Petitioner gave his permission and shortly thereafter, Jimmy Jefferies, another Negro and a white boy brought the girls to petitioner's home.

14. Some time later on the same day a colored boy came to petitioner's home and took the girls away with him.

15. The girls were gone for two or three days and returned to petitioner's home on December 2, 1961.

16. Later on the same day, Joan Shirey left petitioner's home but Shelvy Houser remained in petitioner's home.

17. Later in the same evening, he took Shelvy Houser to Middletown and returned shortly thereafter to his home with Shelvy Houser and Jimmy Jefferies.

18. Jimmy Jefferies and Shelvy Houser "slept upstairs together" in petitioner's home.

19. Joan Shirey came to petitioner's home on December 3, 1961, along with Robert Jefferies, a brother of Jimmy Jefferies.

20. Later in the day, both Robert Jefferies and Jimmy Jefferies left the home of petitioner.

21. On December 4, 1961, at the request of the two girls, petitioner took them in his automobile to Middletown.

22. On December 6, 1961, Robert Jefferies brought the two girls back to the residence of petitioner.

23. On the same day, Shelvy Houser received a phone call from Jimmy Jefferies and had a telephone conversation with him, to which petitioner listened over an extension.

24. The telephone conversation was to the effect that if Shelvy Houser did not return to Middletown that he, Jimmy Jefferies, would "turn her in to the Harrisburg State Hospital" as an escapee.

25. Both of the girls remained in the home of petitioner that night, during which time petitioner had sexual relations with Joan Shirey.

26. On the next day, December 7, 1961, at the request of Shelvy Houser, petitioner took the girls in his automobile to Chambersburg, Pennsylvania, and while enroute was taken into custody by the Pennsylvania State Police.

27. When apprehended, petitioner told the State Police several different stories as to how the girls happened to be in his car.

28. At the time petitioner was transporting the girls from Harrisburg to Chambersburg he had knowledge of the fact that they were escapees from the Harrisburg State Hospital.

29. There was a companion case wherein the operator's license of one Robert Henry Pendelton was suspended by the secretary. See Commonwealth v. Pendelton, 80 Dauph. 20.

### Discussion

We have set forth our findings of fact in accordance with directions of the Supreme Court in Commonwealth v. Etzel, 370 Pa. 253, 258 (1952).

A review of the cases indicates clearly that this matter is before this court de novo, and it is for the court to determine from the evidence produced before it whether appellant should be deprived of his license to drive an automobile for a period of time: Common-

wealth v. Garman, 361 Pa. 643, 645 (1949), and the cases therein cited.

The secretary suspended operator's license of petitioner under the authority of section 618(a)(2) of The Vehicle Code of April 29, 1959, P. L. 58, as amended, 75 PS §618, which provides:

"(a) The secretary may suspend the operating privilege of any person, with or without a hearing before the secretary or his representative, upon receiving a record of proceedings, if any, in which such person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, or whenever the secretary finds upon sufficient evidence: . . .

"(2) That such person has been convicted of a misdemeanor, or has forfeited bail upon such a charge, in the commission of which a motor vehicle or tractor was used."

It is apparent from this section of The Vehicle Code that the legislature intended that one who engages in unlawful conduct which involves the operation of a motor vehicle shall be subject to the suspension of his operator's privilege.

The misdemeanor referred to in this section must, however, have some reasonable relation to the operation of the motor vehicle and the use of the machine must contribute in some reasonable degree to the commission of the misdemeanor: Malloy License, 81 D. & C. 422 (1950). We take judicial notice that Harrisburg and Middletown are approximately ten miles apart and Harrisburg and Chambersburg are in excess of 50 miles apart. Petitioner had knowledge of the immoral conduct of the two girls and of their escapades. They were in and out of his home during a period of approximately two weeks in the company of different men. On one occasion one of the girls and a man occupied the same bed in petitioner's home, and on another occasion petitioner himself had intercourse with one of them.

The transportation of the girls to Chambersburg by petitioner was after he had knowledge that they were escapees from the Harrisburg State Hospital, and we conclude that the trip was for no good purpose.

Petitioner has directed our attention to a number of Federal cases, including the Supreme Court of the United States, wherein it was held that a vehicle used solely for commuting to an illegal distillery is not used in violating the revenue laws within the meaning of the Internal Revenue Code and is not forfeitable thereunder. See United States v. One 1948 Plymouth Sedan, 198 F.2d 399 (1952); United States v. Lane Motor Co., 199 F. 2d 495 (1952), and United States v. Lane Motor Co., 344 U.S. 630 (1953); Burt v. United States, 283 F.2d 473 (1960).

The forfeiture of an automobile was involved in each of the above cases and, in our opinion, can be distinguished from the instant case, which involves the suspension of an operator's license. Forfeitures are harsh actions and are frowned upon by equity: United States v. One 1950 Ford Truck, 195 F.2d 857 (1952).

We conclude that petitioner used a motor vehicle in the commission of a misdemeanor as contemplated by the statute and the suspension is therefore proper.

### Conclusions of Law

1. Petitioner was convicted of a misdemeanor in the commission of which a motor vehicle was used.

2. There was no abuse of discretion by the secretary in suspending the operator's license of petitioner.

3. The suspension of the operator's license of petitioner was in accordance with law.

### Order

And now, December 3, 1962, the appeal of petitioner is dismissed and the order of the Secretary of Revenue in suspending operator's license of petitioner is reinstated. Costs to be paid by petitioner.